# NOTE

November 13, 1997 .............. Harrisburg ..............., .............. Pennsylvania ...............,
**[Date]**             **[City]**             **[State]**

................ 112 summit St Harrisburg, Pennsylvania 17113 ................
**[Property Address]**

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 109,250.00 ................ (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is .. Green Tree Consumer Discount Company,
3401 Hartzdale Drive Suite 132, Camp Hill, PA 17011 ................

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of ...... 13.500 ..... %. Interest will be charged beginning on .......... November 18, 1997 ................

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Scheduled Payments

I will pay principal and interest by making payments when scheduled:

☒ I will make ...... 300 ................ payments of $.. 1,273.47 ................ each on the
................ 18th ................ of each .... Month ................
.............................................. beginning on ... December 18, 1997 ................

☐ I will make payments as follows:

☐ In addition to the payments described above, I will pay a "balloon payment" of $ ................
on ........................................ . The Note Holder will deliver or mail to me notice prior to maturity that the balloon payment is due. This notice will state the balloon payment amount and the date that it is due.

### (B) Maturity Date and Place of Payments

I will make these payments as scheduled until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My scheduled payments will be applied to interest before principal. If, on
........ November 18, 2022 ........................................, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my scheduled payments at .... Green Tree, 7360 S. Kyrene Rd., Tempe, AZ 85283
................................................................ or at a different place if required by the Note Holder.

## 4. BORROWER'S RIGHT TO PREPAY AND PREPAYMENT PENALTY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. ☒ I will pay a prepayment penalty of ... six months interest if the entire loan balance is paid within 36 months from the date of the loan. ................
................ if I prepay this Note in full.

The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any scheduled payment by the end of ........ 15 calendar days after the date it is ................

Case 1:17-cv-00027-RMV-Claim 70-1 Filed 03/27/17 Entered 03/27/17 00:00:00 1 of 1 Page 67

late payment. * of the unpaid

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(B) on page 1 of this Note or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. BALLOON PAYMENT DISCLOSURE

[Complete the balloon payment notice below if this Note provides for a balloon payment at Section 3(A) on page 1 of this Note.]

THIS LOAN IS PAYABLE IN FULL .................................................................................................
............................................................................................................. I MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE, WHICH MAY BE A LARGE PAYMENT. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. I WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT I MAY OWN, OR I WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER I HAVE THIS LOAN WITH, WILLING TO LEND ME THE MONEY. IF I REFINANCE THIS LOAN AT MATURITY, I MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF I OBTAIN REFINANCING FROM THE SAME LENDER.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

.................................................................................................(Seal)
Vincent J Freeman
                                                                                            -Borrower

.................................................................................................(Seal)
                                                                                            -Borrower

.................................................................................................(Seal)
                                                                                            -Borrower

No

# OPEN-END MORTGAGE
## This Mortgage secures future advances

1. **DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is ................................ November 13, 1997 ........................... and the parties, their addresses and tax identification numbers, if required, are as follows:

   MORTGAGOR:     Vincent J Freeman and Elise A Freeman
                  his wife

   ☐ If checked, refer to the attached Addendum incorporated herein, for additional Mortgagors, their signatures and acknowledgments.

   LENDER:     Green Tree Consumer Discount Company
               3401 Hartzdale Drive Suite 132
               Camp Hill, Pennsylvania  17011

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, conveys and mortgages to Lender the following described property:

   See Exhibit A

   Parcel I.D. ■■■■■■■

   The property is located in ........ Dauphin ........................................ at ........................................
                                                     (County)
   ................................................., ..................., Pennsylvania .................
                              (Address)              (City)                            (ZIP Code)

   Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ ........ 109,250.00 ........................... . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)*
   Note dated November 13, 1997, between Green Tree Consumer Discount Company and Vincent J Freeman, for $109,250.00, maturing November 18, 2022.

B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Mortgagor in favor of Lender executed after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All obligations Mortgagor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell, and mortgage the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:

A. To make all payments when due and to perform or comply with all covenants.

B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.

C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. **CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims and actions against Mortgagor, and of any loss or damage to the Property.

© 1994 Bankers Systems, Inc., St. Cloud, MN ▮▮▮▮ Form RE-MTG-PA 12/19/94 BK 2976 PG 175

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

11. **AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

12. **ASSIGNMENT OF LEASES AND RENTS.** Mortgagor irrevocably grants, bargains, conveys and mortgages to Lender as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Mortgagor will promptly provide Lender with true and correct copies of all existing and future Leases. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default under the terms of this Security Instrument.

Mortgagor agrees that this assignment is immediately effective between the parties to this Security Instrument and effective as to third parties on the recording of this Security Instrument, and this assignment will remain effective until the Obligations are satisfied. Mortgagor agrees that Lender is entitled to notify Mortgagor or Mortgagor's tenants to make payments of Rents due or to become due directly to Lender after such recording, however Lender agrees not to notify Mortgagor's tenants until Mortgagor defaults and Lender notifies Mortgagor of the default and demands that Mortgagor and Mortgagor's tenants pay all Rents due or to become due directly to Lender. On receiving notice of default, Mortgagor will endorse and deliver to Lender any payment of Rents in Mortgagor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Mortgagor warrants that no default exists under the Leases or any applicable landlord/tenant law. Mortgagor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

13. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

14. **DEFAULT.** Mortgagor will be in default if any party obligated on the Secured Debt fails to make payment when due. Mortgagor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

15. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

*(page 3 of 6)*

Case 17-10152-RNO   Doc 10-1 Filed 09/28/17   Entered 09/28/17 09:22:11   Page 21
Main Document 50 Page 5 of 24

**16. EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Security Instrument. Mortgagor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released. Mortgagor agrees to pay for any recordation costs of such release.

**17. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Mortgagor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

C. Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.

D. Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

**18. CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds will be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**19. INSURANCE.** Mortgagor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

© 1994 Bankers Systems, Inc., St. Cloud, MN          Form RE-MTG-PA 12/19/94

BK 2976 PG 177

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

20. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

22. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

23. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

24. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

25. **WAIVERS.** Except to the extent prohibited by law, Mortgagor waives any right to appraisement relating to the Property.

©1994 Bankers Systems, Inc., St. Cloud, MN.         Form RE-MTG-PA 12/19/9  BK 2976 PG 178

**26. OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

☐ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

☐ **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

☐ **Purchase Money.** This Security Instrument secures advances by Lender used in whole or in part to acquire the Property. Accordingly, this Security Instrument, and the lien hereunder, is and shall be construed as a purchase money mortgage with all of the rights, priorities and benefits thereof under the laws of the Commonwealth of Pennsylvania.

☐ **NOTICE TO BORROWER: THIS DOCUMENT CONTAINS PROVISIONS FOR A VARIABLE INTEREST RATE.**

☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
☐ Condominium Rider ☐ Planned Unit Development Rider ☐ Other ...........................................................

☐ **Additional Terms.**

**SIGNATURES:** By signing below, Mortgagor, intending to be legally bound hereby, agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

........................................................ 11/13/97
(Signature) Vincent J Freeman, (Date)

........................................................ 11-13-97
(Signature) Elise A Freeman (Date)

........................................................
(Witness)

........................................................
(Witness)

**ACKNOWLEDGMENT:**

(Individual)
COMMONWEALTH OF ....Pennsylvania........................, COUNTY OF ....Cumberland........................ } ss.
On this, the ....13.......... day of ......November, 1997...................... before me ........................................,
the undersigned officer, personally appeared ....Vincent J Freeman and Elise A Freeman....................,
........................................................, known to me (or satisfactorily proven) to be
the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

My commission expires:
........................................................

........................................................
JARED D. WEISS
Title of Officer

NOTARIAL SEAL
JARED D. WEISS, Notary Public
Camp Hill Boro, Cumberland County
My Commission Expires March 5, 2001

It is hereby certified that the address of the Lender within named is: ....Green Tree Consumer Discount Company........
3401 Hartzdale Drive, Suite 132, Camp Hill, Pennsylvania 17011........................................................

........................................................

© 1994 Bankers Systems, Inc., St. Cloud, MN ████ Form RE-MTG-PA 12/19/94 *(page 6 of 6)*

## Exhibit A

Legal Description:

ALL THAT CERTAIN PROPERTY SITUATED IN THE TOWNSHIP OF SWATARA, DAUPHIN COUNTY
AND COMMONWEALTH OF PENNSYLVANIA BEING MORE FULLY DESCRIBED IN DEED DATED
02/12/85, RECORDED 02/13/85, APPEARING AMONG THE LAND RECORDS OF THE COUNTY AND
STATE SET FORTH ABOVE IN DEED BOOK VOLUME 583, PAGE 348

Parcel ID: ▮▮▮▮▮▮

I hereby CERTIFY that this document is
recorded in the Recorder's Office of
Dauphin County, Pennsylvania.

RECORDER OF DEEDS OF DAUPHIN COUNTY
PENNSYLVANIA

Philip Spaseff
Recorder of Deeds

When Recorded Return To:
Ditech Financial LLC
Attn: Document Custody, T326
7360 South Kyrene Rd
Tempe, AZ 85283

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
2016-0091984 02/12/16 11:10
PAPER RECORDING

# LIMITED POWER OF ATTORNEY

| TO | DITECH FINANCIAL LLC |
|---|---|
| FROM | U. S. BANK NATIONAL ASSOCIATION, as Trustee |
| DEAL | Numerous Deals – See Schedule A in POA |
| TRANSFER DATE | Numerous Transfer Dates |
| TRUST | Numerous Trusts - See Schedule A in POA |
| ISSUE DATE | 01/08/2016 |
| EXPIRATION DATE | N/A |

Document drafted by and
RECORDING REQUESTED BY:
Ditech Financial LLC f.k.a. Green Tree Servicing LLC
7360 South Kyrene Rd
Tempe, AZ 85283

SPACE ABOVE THIS LINE FOR RECORDER'S USE

**LIMITED POWER OF ATTORNEY**

**The trusts identified on the attached Schedule A (the "Trusts"),** by and through **U.S. Bank National Association,** a national banking association organized and existing under the laws of the United States and having an office at 60 Livingston Avenue, EP-MN-WS3D, St. Paul, MN 55107, not in its individual capacity but solely as Trustee ("Trustee"), hereby constitutes and appoints Ditech Financial LLC f.k.a. Green Tree Servicing LLC ("Servicer"), and in its name, aforesaid Attorney-In-Fact, by and through any officer appointed by the Board of Directors of Servicer, to execute and acknowledge in writing or by facsimile stamp all documents customarily and reasonably necessary and appropriate for the tasks described in the items (1) through (12) below; provided however, that (a) the documents described below may only be executed and delivered by such Attorneys-In-Fact if such documents are required or permitted under the terms of the related servicing agreements, (b) all actions taken by Servicer pursuant to this Limited Power of Attorney must be in accordance with Federal, State and local laws and procedures, as applicable and (c) no power is granted hereunder to take any action that would be either adverse to the interests of or be in the name of U.S. Bank National Association in its individual capacity. This Limited Power of Attorney is being issued in connection with Servicer's responsibilities to service certain mortgage loans (the "Loans") held by the Trustee. These Loans are secured by collateral comprised of mortgages, deeds of trust, deeds to secure debt and other forms of security instruments (collectively the "Security Instruments") encumbering any and all real and personal property delineated therein (the "Property") and the Notes secured thereby. Please refer to **Schedule A** attached hereto.

1.  Demand, sue for, recover, collect and receive each and every sum of money, debt, account and interest (which now is, or hereafter shall become due and payable) belonging to or claimed by the Trustee, and to use or take any lawful means for recovery by legal process or otherwise, including but not limited to the substitution of trustee serving under a Deed of Trust, the preparation and issuance of statements of breach, notices of default, and/or notices of sale, accepting deeds in lieu of foreclosure, evicting (to the extent allowed by federal, state or local laws) foreclosing on the properties under the Security Instruments by judicial or non-judicial foreclosure, actions for temporary restraining orders, injunctions, appointments of receiver, suits for waste, fraud and any and all other tort, contractual or verifications in support thereof, as may be necessary or advisable in any bankruptcy action, state or federal suit or any other action.

2.  Execute and/or file such documents and take such other action as is proper and necessary to defend the Trustee in litigation and to resolve any litigation where the Servicer has an

obligation to defend the Trustee, including but not limited to dismissal, termination, cancellation, rescission and settlement.

3. Transact business of any kind regarding the Loans, as the Trustee's act and deed, to contract for, purchase, receive and take possession and evidence of title in and to the Property and/or to secure payment of a promissory note or performance of any obligation or agreement relating thereto.

4. Execute, complete, indorse or file bonds, notes, mortgages, deeds of trust and other contracts, agreements and instruments regarding the Borrowers and/or the Property, including but not limited to the execution of estoppel certificates, financing statements, continuation statements, releases, satisfactions, reconveyances, assignments, loan modification agreements, payment plans, waivers, consents, amendments, forbearance agreements, loan assumption agreements, subordination agreements, property adjustment agreements, management agreements, listing agreements, purchase and sale agreements and other instruments pertaining to mortgages or deeds of trust, and execution of deeds and associated instruments, if any, conveying the Property, in the interest of the Trustee.

5. Endorse on behalf of the undersigned all checks, drafts and/or other negotiable instruments made payable to the undersigned.

6. Execute any document or perform any act in connection with the administration of any PMI policy or LPMI policy, hazard or other insurance claim relative to the Loans or related Property.

7. Execute any document or perform any act described in items (3), (4), and (5) in connection with the termination of any Trust as necessary to transfer ownership of the affected Loans to the entity (or its designee or assignee) possessing the right to obtain ownership of the Loans.

8. Subordinate the lien of a mortgage, deed of trust, or deed to secure debt (i) for the purpose of refinancing Loans, where applicable, or (ii) to an easement in favor of a public utility company or a government agency or unit with powers of eminent domain, including but not limited to the execution of partial satisfactions and releases and partial reconveyances reasonably required for such purpose, and the execution or requests to the trustees to accomplish the same.

9. Convey the Property to the mortgage insurer, or close the title to the Property to be acquired as real estate owned, or convey title to real estate owned property ("REO Property").

10. Execute and deliver any documentation with respect to the sale, maintenance, preservation, renovation, repair, demolition or other disposition, of REO Property acquired through a foreclosure or deed-in-lieu of foreclosure, including, without limitation: permits, remediation plans or agreements, certifications, compliance certificates, health and safety certifications, listing agreements; purchase and sale agreements; grant / limited or special warranty / quit claim deeds or any other deed, but not general warranty deeds, causing the transfer of title of the property to a party contracted to purchase same; escrow instructions; and any and all documents necessary to effect the transfer of REO Property.

11. Servicer has the power to execute additional limited powers of attorney and delegate the authority given to it by U.S. Bank National Association, as Trustee, under the related servicing agreements listed on Schedule A, attached.

12. To execute, record, file and/or deliver any and all documents of any kind where Trustee's interest is designated, stated or characterized as "Successor Trustee", "Successor in Interest", "Successor to", "Trustee/Custodian", "Custodian/Trustee" or other similar designation.

Trustee also grants unto Servicer the full power and authority to correct ambiguities and errors in documents necessary to effect or undertake any of the items or powers set forth in items (1) to (12), above.

In addition to the indemnification provisions set forth in the applicable servicing agreements for the Trusts listed on Schedule A, attached, Servicer hereby agrees to indemnify and hold the Trustee, and its directors, officers, employees and agents harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever incurred by reason or result of the misuse of this Limited Power of Attorney by the Servicer. The foregoing indemnity shall survive the termination of this Limited Power of Attorney and the related servicing agreements or the earlier resignation or removal of the Trustee under the related servicing agreements listed on Schedule A, attached.

**Witness** my hand and seal this 8th day of January, 2016.

**NO CORPORATE SEAL**

On Behalf of the Trusts, by
U.S. Bank National Association, as Trustee

Witness: Savas Apostolakis

By: _____
April E. Haley, Vice President

Witness: Jonathan L. Shropshire

By: _____
Edward W. Przybycien Jr., Asst. Vice President

Attest: Mary Ann R. Turbak, Trust Officer

# CORPORATE ACKNOWLEDGMENT

State of Illinois

County of Cook

On this 8th day of January, 2016, before me, the undersigned, a Notary Public in and for said County and State, personally appeared April E. Haley, Edward W. Przybycien Jr. and Mary Ann R. Turbak, personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons who executed the within instrument as Vice President, Assistant Vice President, and Trust Officer, respectively of U.S. Bank National Association, a national banking association, and acknowledged to me that such national banking association executed the within instrument pursuant to its by-laws or a resolution of its Board of Directors.

WITNESS my hand and official seal.

Signature: _____

Christopher J. Nuxoll

My commission expires: 4/15/2018

OFFICIAL SEAL
CHRISTOPHER J NUXOLL
Notary Public - State of Illinois
My Commission Expires Apr 15, 2018

# Schedule A

## U.S. Bank National Association, as Trustee, for:

MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1997-7
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1997-8
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1998-1
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1998-2
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1998-3
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1998-4
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1998-5
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1998-6
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1998-7
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1998-8
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1999-1
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1999-2
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1999-3
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1999-4
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1999-5
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1999-6
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 2000-1
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 2000-2
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 2000-3
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 2000-4
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 2000-5
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 2000-6
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 2001-1
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 2001-2
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 2001-3
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 2001-4
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 2002-1
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 2002-2

CONSECO FINANCE HOME EQUITY LOAN TRUST 2002-A
CONSECO FINANCE HOME EQUITY LOAN TRUST 2002-B
CONSECO FINANCE HOME EQUITY LOAN TRUST 2002-C

GREEN TREE 2008-REC1
GREEN TREE 2008-HE1

**U.S. Bank National Association, as Trustee, for:**     **(continued)**

IRWIN HOME EQUITY LOAN TRUST 2004-1
IRWIN HOME EQUITY LOAN TRUST 2005-1
IRWIN HOME EQUITY LOAN TRUST 2006-1
IRWIN WHOLE LOAN HOME EQUITY TRUST 2003-A
IRWIN WHOLE LOAN HOME EQUITY TRUST 2003-D
IRWIN WHOLE LOAN HOME EQUITY TRUST 2005-B
IRWIN WHOLE LOAN HOME EQUITY TRUST 2005-C

NEWCASTLE 2005-1 ASSET-BACKED NOTE LLC
NEWCASTLE 2006-1 ASSET-BACKED NOTE LLC
NEWCASTLE INVESTMENT TRUST 2010-MH1, ASSET-BACKED NOTES, SERIES 2010-MH1
NEWCASTLE INVESTMENT TRUST 2011-MH1, ASSET-BACKED NOTES, SERIES 2011-MH1

LEHMAN ABS MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE ASSET-BACKED
CERTIFICATE TRUST, SERIES 2001-B

LEHMAN ABS MANUFACTURED HOUSING CONTRACT TRUST 2002-A

CITIGROUP MORTGAGE LOAN TRUST INC., MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2009-C

CITIGROUP MORTGAGE LOAN TRUST 2012-A, MORTGAGE-BACKED NOTES, SERIES 2012-A

SASCO MORTGAGE LOAN TRUST 2007- RNP1, MORTGAGE-BACKED NOTES

MERRILL LYNCH MORTGAGE INVESTORS TRUST, SERIES 2010-NP1

GMACM MORTGAGE LOAN TRUST 2010-2, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2010-2

RICE PARK FINANCING WHOLE LOAN GRANTOR TRUST 2012-1
RICE PARK FINANCING WHOLE LOAN PASS-THROUGH TRUST 2012-1

CVI LOAN TRUST I
CVI LOAN GT TRUST I

WCO REMIC TRUST 2015-1

WCO PASS-THROUGH TRUST 2015-1

GRAND NEW START PASS THROUGH TRUST

**U.S. Bank National Association, as Trustee, as successor to First Bank National Association, as Trustee, for:**

MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1992-2
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1993-1
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1993-2
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1993-3
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1993-4
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1994-1
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1994-2
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1994-3
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1994-4
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1994-5
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1994-6
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1994-7
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1994-8
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1995-1
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1995-2
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1995-3
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1995-4
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1995-5
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1995-6
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1995-7

**U.S. Bank National Association, as Trustee, as successor to Firstar Trust Company, as Trustee, for:**

MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1995-8
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1995-9
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1995-10
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1996-3
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1996-4
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1996-5
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1996-6
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1996-7
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1996-8
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1996-9
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1996-10
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1997-1
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1997-2
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1997-3
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1997-4

**U.S. Bank National Association, as Trustee, as successor to Firstar Trust Company, as Trustee, for: (continued)**

MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1997-5
MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATE TRUST 1997-6

**U.S. Bank National Association, as Trustee, as successor to U.S. Bank Trust National Association, as Trustee, for:**

GREEN TREE RECREATIONAL, EQUIPMENT & CONSUMER TRUST 1998-B
GREEN TREE RECREATIONAL, EQUIPMENT & CONSUMER TRUST 1998-C

CONSECO FINANCE HOME LOAN TRUST 1999-G
CONSECO FINANCE HOME EQUITY LOAN TRUST 2001-C
CONSECO FINANCE HOME EQUITY LOAN TRUST 2001-D

CONSECO FINANCE HOME IMPROVEMENT LOAN TRUST 2000-E

HOME IMPROVEMENT AND HOME EQUITY LOAN TRUST 1998-B
HOME EQUITY LOAN TRUST 1998-C
BEAR STEARNS HOME LOAN OWNER TRUST 2001-A

**U.S. Bank National Association, as Trustee, as successor to U.S. Bank Trust National Association, as Trustee, which was successor to First Trust National Association, as Trustee, for:**

HOME IMPROVEMENT LOAN TRUST 1994-BI
HOME IMPROVEMENT LOAN TRUST 1994-CI
HOME IMPROVEMENT LOAN TRUST 1994-D
HOME IMPROVEMENT LOAN TRUST 1995-A
HOME IMPROVEMENT LOAN TRUST 1995-C
HOME IMPROVEMENT LOAN TRUST 1995-D
HOME IMPROVEMENT LOAN TRUST 1995-E
HOME IMPROVEMENT LOAN TRUST 1995-F
HOME IMPROVEMENT LOAN TRUST 1996-A
HOME IMPROVEMENT LOAN TRUST 1996-B
HOME IMPROVEMENT AND HOME EQUITY LOAN TRUST 1996-C
HOME IMPROVEMENT AND HOME EQUITY LOAN TRUST 1996-D
HOME IMPROVEMENT LOAN TRUST 1996-E
HOME IMPROVEMENT AND HOME EQUITY LOAN TRUST 1996-F
HOME IMPROVEMENT AND HOME EQUITY LOAN TRUST 1997-B
HOME IMPROVEMENT AND HOME EQUITY LOAN TRUST 1997-C
HOME IMPROVEMENT AND HOME EQUITY LOAN TRUST 1997-D

**U.S. Bank National Association, as Trustee, as successor to U.S. Bank Trust National Association, as Trustee, which was successor to First Trust National Association, as Trustee, for:     (continued)**

HOME IMPROVEMENT AND HOME EQUITY LOAN TRUST 1997-E

GREEN TREE RECREATIONAL, EQUIPMENT & CONSUMER TRUST 1996-B
GREEN TREE RECREATIONAL, EQUIPMENT & CONSUMER TRUST 1996-C
GREEN TREE RECREATIONAL, EQUIPMENT & CONSUMER TRUST 1996-D
GREEN TREE RECREATIONAL, EQUIPMENT & CONSUMER TRUST 1997-A
GREEN TREE RECREATIONAL, EQUIPMENT & CONSUMER TRUST 1997-D

MANUFACTURED HOME LOAN BACKED SECURITY, SERIES 1992 MH-1

**U.S. Bank National Association, as Successor Trustee to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee, for:**

ORIGEN MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE ASSET-BACKED CERTIFICATES, SERIES 2001-A

HOME EQUITY LOAN TRUST 2007-HSA1

**U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee, for:**

MID-STATE TRUST XI
MID-STATE CAPITAL CORPORATION 2005-1 TRUST

**U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee, successor by merger to First Union National Bank, as Trustee, for:**

MID-STATE TRUST VI
MID-STATE TRUST VII
MID-STATE TRUST VIII
MID-STATE TRUST X

**U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee, successor by merger to First Union National Bank, as Trustee, formerly known as First Union National Bank of North Carolina, as Trustee, successor by merger to First Union National Bank of Florida, as Trustee, for:**

MID-STATE TRUST II
MID-STATE TRUST IV



# Delaware

PAGE 1

*The First State*

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF MERGER, WHICH MERGES:

"DITECH MORTGAGE CORP", A CALIFORNIA CORPORATION,

"DT HOLDINGS LLC", A DELAWARE LIMITED LIABILITY COMPANY,

WITH AND INTO "GREEN TREE SERVICING LLC" UNDER THE NAME OF "GREEN TREE SERVICING LLC", A LIMITED LIABILITY COMPANY ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE, AS RECEIVED AND FILED IN THIS OFFICE THE THIRTEENTH DAY OF AUGUST, A.D. 2015, AT 1:35 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF THE AFORESAID CERTIFICATE OF MERGER IS THE THIRTY-FIRST DAY OF AUGUST, A.D. 2015, AT 12:05 O'CLOCK A.M.

Jeffrey W. Bullock, Secretary of State

2458190    8100M

151168309

AUTHENTICATION: 2641973

DATE: 08-13-15

You may verify this certificate online at corp.delaware.gov/authver.shtml

State of Delaware
Secretary of State
Division of Corporations
Delivered 01:35 PM 08/13/2015
FILED 01:35 PM 08/13/2015
SRV 151168309 - 2458190 FILE

# STATE OF DELAWARE
# CERTIFICATE OF MERGER

Pursuant to Title 6, Section 18-209 of the Delaware Limited Liability Company Act, the undersigned hereby executes the following Certificate of Merger:

**FIRST**: The surviving limited liability company is **Green Tree Servicing LLC**, a Delaware limited liability company, and the corporation and limited liability company being merged into this surviving limited liability company are:

> **DT Holdings LLC**, a Delaware limited liability company, and
> **Ditech Mortgage Corp**, a California corporation.

**SECOND:** The Agreement and Plan of Merger has been approved, adopted, certified, executed and acknowledged by each of the constituent corporations and limited liability companies pursuant to Title 6, Section 18-209 of the Delaware Limited Liability Company Act.

**THIRD:** The name of the surviving limited liability company is hereby amended to **Ditech Financial LLC**, a Delaware limited liability company (as such surviving entity, the "Surviving Limited Liability Company").

**FOURTH:** The mergers are to become effective as of 12:05 AM EDT on August 31, 2015.

**FIFTH:** The Agreement and Plan of Merger is on file at 3000 Bayport Drive, Suite 880, Tampa, FL 33607, the principal place of business of the Surviving Limited Liability Company.

**SIXTH:** A copy of the Agreement and Plan of Merger will be furnished by the Surviving Limited Liability Company on request, without cost, to any stockholder or member of the constituent corporations or limited liability companies, as applicable.

[The remainder of page intentionally left blank.]

**IN WITNESS WHEREOF,** said Surviving Limited Liability Company has caused this certificate to be signed by an authorized officer, the 4th day of August, 2015.

**GREEN TREE SERVICING LLC**

By: _Wanda Lamb Lindow_

Name: Wanda Lamb-Lindow
Title: Assistant Secretary

# Delaware

## *The First State*

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF MERGER, WHICH MERGES:

"GREEN TREE CONSUMER DISCOUNT COMPANY", A PENNSYLVANIA CORPORATION,

WITH AND INTO "GREEN TREE SERVICING LLC" UNDER THE NAME OF "GREEN TREE SERVICING LLC", A LIMITED LIABILITY COMPANY ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE, AS RECEIVED AND FILED IN THIS OFFICE THE TWENTY-FIFTH DAY OF AUGUST, A.D. 2014, AT 4:24 O'CLOCK P.M.

Jeffrey W. Bullock, Secretary of State

2458190   8100M

141106885

AUTHENTICATION: 1647171

DATE: 08-26-14

You may verify this certificate online at corp.delaware.gov/authver.shtml

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 04:31 PM 08/25/2014*
*FILED 04:24 PM 08/25/2014*
*SRV 141106885 - 2458190 FILE*

# CERTIFICATE OF MERGER

## OF

## GREEN TREE CONSUMER DISCOUNT COMPANY
### (A Pennsylvania Corporation)

## INTO

## GREEN TREE SERVICING LLC
### (A Domestic Limited Liability Company)

* * * * * * *

Pursuant to Title 6, Section 18-209 of the Delaware Limited Liability Company Act.

**First**, the name of the surviving Limited Liability Company is Green Tree Servicing LLC, a Delaware Limited Liability Company.

**Second**, the name of the Corporation being merged into this surviving Limited Liability Company is Green Tree Consumer Discount Company. The jurisdiction in which this Corporation was formed is Pennsylvania.

**Third**, the Agreement and Plan of Merger has been approved and executed by both entities.

**Fourth**, the name of the surviving Limited Liability Company is Green Tree Servicing LLC.

**Fifth**, the executed Agreement and Plan of Merger is on file at 1100 Landmark Towers, 345 St. Peter Street, St. Paul, MN 55102, the principal place of business of the surviving Limited Liability Company.

**Sixth**, a copy of the Agreement and Plan of Merger will be furnished by the surviving Limited Liability Company on request, without cost, to any member of the Limited Liability Company or any person holding an interest in any other business entity which is to merge or consolidate.

**IN WITNESS WHEREOF**, said Limited Liability Company has caused this certificate to be signed by an authorized person, this 14th day of August, 2014.

GREEN TREE SERVICING LLC

By: _____
Name: Brian Corey
Title: Senior Vice President and Secretary